## MATHEWS v. BERRETT et al.

No. 2279. Decided December 30, 1912. Rehearing Denied
January 23, 1913 (129 Pac. 419).

1. ASSIGNMENTS—IRRIGATION WATER—CONTRACT TO EXCHANGE—
TRANSFER BY DELIVERY. Where plaintiff's grantor on conveying
the land to her also delivered a contract with defendant B. for
an exchange of irrigation water to be used in connection with
the land conveyed, the delivery of such contract without formal
assignment constituted a sufficient transfer of the interest of
plaintiff's grantor in the contract, and entitled complainant to
sue to enforce the same. (Page 180.)

2. SPECIFIC PERFORMANCE—EXCHANGE OF PROPERTY—IRRIGATION
WATER—FINDINGS. In a suit for specific performance of a con-
tract for the exchange of certain irrigation water, evidence held
to require findings that complainant had legal title to the water
which she contracted to deliver to defendant, and that she was
ready, able, and willing to perform all the conditions of the
exchange contract to be performed on her part. (Page 181.)

3. SPECIFIC PERFORMANCE—EXCHANGE OF PROPERTY—IRRIGATION
WATER—NECESSITY OF EXCHANGE—IMPROVEMENT TO PROPERTY.
Where a water right attached to complainant's land could not be
used thereon, whereupon complainant's grantor contracted with
defendant B. for an exchange of such water right for the right
to take water from another stream appurtenant to B.'s land, and
complainant and her predecessors had been using the water pur-
suant to the exchange since 1870 or 1872, and a written contract
therefor was made in 1892, but which failed to specify any
length of time the contract was to run, and the complainant
made valuable and lasting improvements on her land in reliance
on the exchange having no other source from which to obtain
water, the contract would be construed as continuing until
terminated by consent of both parties, and complainant was
therefore entitled to enforce specific performance on B.'s repudia-
tion thereof. (Page 181.)

APPEAL from District Court, Second District; *Hon. J. A.
Howell,* Judge.

Action by Ruth P. Mathews against Richard T. Berrett
and the Rice Creek Irrigation Company.

Judgment for defendants. Plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Richards & Boyd* for appellant.

*A. G. Horn* for respondents.

### APPELLANT'S POINTS.

If the particular thing contracted for is desired, or if the party desiring it or the other *circumstances of the case,* are such that money damages would not be an adequate compensation for its loss, equity will decree its delivery to him. (4 Pomeroy [3 Ed.], sec. 1402; 26 Am. and Eng. Ency. Law 104; *Treasurer v. Mining Co.,* 23 Cal. 391; *Senter v. Davis,* 38 Cal. 451.)

Water in Utah is of the character of real property and must be passed by deed except when represented by stock. However, we submit being represented by stock does not change the character of the water. It only changes the character of evidence of ownership. We have above considered that the contract here is along the line of affecting personal property or mixed. However, we submit that the contract here is essential only for the use and possession of real property. Being so, the equitable doctrine is universal that where land or any estate therein is the subject of the agreement, such agreement will be enforced specifically. (4 Pomeroy [3 Ed.], sec. 1402; 36 Cyc. 552, and cases cited.)

We have not been able to find a case in the decisions like this contract, and involving the use of water. But equitable principles are universal and meet new conditions as they arise. There are cases in the books where courts have enforced agreements to renew or continue leases. (*Clark v. Clark,* 49 Cal. 586.) They have enforced contracts to convey the use of land for rights of way. (*Coy v. Minneapolis Railway,* 90 N. W. [Ia.] 344.) They have enforced contracts for the sale of pulp wood from trees growing on land. (*St. Regis Company v. Santa Clara Co.,* 65 N. E. [N. Y.] 967.)

RESPONDENTS' POINTS.

The terms of a contract are an essential part thereof and specific performance thereof cannot be decreed where the terms thereof for which the same is given are not stated or given. (36 Cyc. 598; *Solomon v. Co.*, 55 S. E. 300; *Thoemke v. Feidler*, 64 N. W. 1030; *Christien v. Co.*, 17 So. 352; *Gates v. Gamble*, 18 N. W. 631; *Gardner v. Watson*, 13 Ill. 347; *Brehm v. Sperry*, 48 Atl. 368.)

STATEMENT OF FACTS.

The facts of the case, in substance, are as follows: Appellant, Ruth P. Mathews, is the owner of about forty-five acres of land situated in Weber County, this state. A portion of this land, about three acres, is irrigated with water from a spring situated thereon, and for more than forty years next preceding the commencement of this action a portion of the land has been irrigated with water from a stream known as Rice Creek. An orchard has been grown on the land, and during each and every season of the forty years mentioned appellant and her predecessors in interest have planted and grown grain and other valuable crops thereon. Respondent Richard T. Berrett, is and for more than forty years has been, the owner of farming lands under what is known as the Cold Water Canal. These lands are so situated that it has been and is impracticable to supply them with water from Rice Creek, and appellant cannot be supplied with water from the Cold Water Canal. Appellant's predecessors in interest were owners of a water right in the Cold Water Canal, and Berrett was the owner and entitled to the use of water for irrigating purposes from Rice Creek. These parties, Berrett and appellant's predecessors in interest, in 1872, or prior thereto, exchanged with each other the water represented by their respective interests in the streams mentioned. Under this arrangement, appellant's predecessors in interest were, for many years, supplied with water to irrigate the land now owned by appellant, and Berrett received water with which to irrigate his land from the

Cold Water Canal. In 1892 the Rice Creek Irrigation Company, for the purpose of regulating and distributing the waters of Rice Creek and improving its system, became incorporated. When incorporated, the company issued to Berrett a certificate of stock for the interest represented by the water which he had exchanged with appellant's predecessors in interest for water in the Cold Water Canal. In the same year the following written agreement was entered into between Elijah Shaw, Sr., one of appellant's predecessors in interest and Berrett:

"The contract, made the 7th day of June, A. D. 1892, between Richard T. Berrett of North Ogden, in the county of Weber and territory of Utah, the party of the first part, and Elijah Shaw, Sr., of Pleasant View, in said County of Weber and territory of Utah, the party of the second part, witnesseth: That the said Richard T. Berrett, in consideration of the covenants on the part of the party of the second part, hereinafter contained, doth covenant and agree to and with the said party of the second part that he will let him, Elijah Shaw, have and use a ten and three-fourths hours water right in and to the waters flowing in what is known as Rice Creek every five and a half days according to the regulation of the Rice Creek Irrigation Company. Said Richard T. Berrett owning twenty-six shares in said company, giving him the right to fourteen hours and thirty minutes for field use every five and one-half days and reserving from said second party three hours and forty-five minutes. And the said Elijah Shaw, Sr., in consideration of the covenants on the part of the party of the first part, doth covenant and agree to and with the said Richard T. Berrett that he, Elijah Shaw, Sr., will furnish fifteen hours per week in and of North Ogden Irrigation Company's canal water to go to Harrisville in exchange for Cold Water Company water and securing eleven and three-fourths (11¾) hours of Cold Water Creek water as distributed by said Cold Water Irrigation Company every five and one-half (5½) days to be delivered or turned into the South Rice Creek

42 Utah 12

ditch, and further agrees to keep the Cold Water Ditch in repair and if said Cold Water streams shall fail to be as large as Rice Creek the shortage to be made up from said Rice Creek if from no other source. In witness whereof, we have hereunto set our hands and seals the day and year first above written. Richard T. Berrett. Elijah Shaw, Sr. Signed and delivered in presence of: Geo. S. Dean. John Hall. (Duly acknowledged by both.)"

In June, 1904, appellant purchased the land upon which the Rice Creek water in question has been used, and at the time of the execution of the deed to the land her grantor delivered to her the contract above set forth. Upon the execution of the deed and the delivery to her of the contract for the exchange of water, appellant went into possession of the land, about twenty-one acres of which had been, and was being cultivated. About eight acres of the land was in orchard. This appellant improved by removing therefrom old fruit trees, and planting young ones in their stead. She cleaned off and brought into cultivation about fifteen acres of the new land; that is, land that had not theretofore been irrigated or farmed. She also made other valuable and permanent improvements on the land. The evidence without conflict shows that the improvements made and erected on the land by appellant's predecessors in interest were of the value of about $2000, and that appellant during the first five years of her ownership of the premises has made improvements thereon of the value of $3000, and that during these five years she has used the Rice Creek water in question to irrigate the orchard and crops grown thereon. No one during this time disputed or even questioned her right to the use of Rice Creek water. The evidence shows and the court found that appellant's "lands are arid in character and require the application of water for irrigation for the purpose of producing crops consisting of orchards, grains, grasses, and other farm products growing upon the same," and the evidence also shows that without irrigation this land would be unproductive and practically valueless. At the opening of the irrigation season of 1909 Berrett for

the first time denied appellant's right to the use of the Rice Creek water in question, and refused to longer abide by the terms of the contract, and demanded of the Rice Creek Irrigation Company that it distribute to him the water which had theretofore for more than forty years been distributed to appellant and her predecessors in interest. Whereupon appellant commenced this action to compel the Rice Creek Irrigation Company to distribute to her the water in question in accordance with the rules and regulations of the company for the distribution of its waters, and' to compel Berrett "to specifically perform his agreement to deliver and permit to be delivered (to appellant) such water at all times and so long as the conditions of said agreement shall or may be performed by plaintiff."

The court found, among other things, and the findings are supported by the evidence (No. 5), "that since the execution of said contract (Exhibit A) the said water has been used according to the terms of said agreement, and the Rice Creek Irrigation Company has distributed the water belonging to the defendant Berrett upon the land described in the complaint and to the parties in possession thereof; and said defendant Berrett has received and used from the Cold Water Creek during all of said times water which was used upon the land described as belonging to him in the complaint on file herein. . . . No. 6. That the plaintiff and her predecessors in interest have since the execution of Exhibit A not exercised any ownership nor paid any assessments upon the stock of the Rice Creek Irrigation Company, and have only paid the expenses of cleaning ditches and water master, and that all the other assessments upon the said' stock have been paid during all of said time by the defendant Berrett, and the defendant Berrett during all of the said times has not paid the taxes or assessments upon the Cold Water Irrigation Company's stock mentioned in said contract (Exhibit A), but same were paid by the plaintiff and her predecessors in interest." The court also found (No. 4) "that said contract (Exhibit A) has never been assigned or transferred to this plaintiff, and that

she is not the owner of the Rice Creek waters mentioned
and described in said contract; and there is no evidence
in this case to show that the plaintiff is the owner of the
North Ogden Irrigation Company waters mentioned in the
said Exhibit A, and that she is not able, ready, or willing
to perform or comply with all of the conditions of said con-
tract (Exhibit A)."

McCARTY, J. (after stating the facts as above).

The contention first made by appellant on this appeal
is that the court's fourth finding of fact is not only unsup-
ported by, but is contrary to, the evidence. This assign-
ment of error involves the following propositions: (1) Was
the contract in question assigned or transferred to appellant?
(2) Has appellant the legal title to a sufficient amount of
water in North Ogden Irrigation Company to enable her
to perform and comply with the terms and conditions of
the contract? (3) Is she able, ready, and willing to per-
form all of the conditions of the contract to be performed
on her part?

We think that all of these propositions must be answered
in the affirmative. N. P. Mathews testified, and his evi-
dence is not disputed, that at the time of the conveyance to
appellant of the land on which the Rice Creek water in
question has been used the contract was delivered to him as
agent for appellant by her grantors; that during the inter-
vening five years between the time of the conveyance of the
land and the commencement of this action he was in charge
of, farmed, and improved the premises for appellant; and
that during this time the land was supplied with "exchange
water" covered by the contract.

The law is well settled that the delivery of an instrument
such as the contract in question when supported by a val-
uable consideration is sufficient to pass whatever inter-
est the transferror may have in or to the instrument.          ⚏
In 4 Cyc. 44, the rule as declared by practically all
of the authorities is stated as follows:

"When supported by a valuable consideration, no writing is necessary to the assignment of written instruments, and the delivery of the chose in action, or the written evidence of the right, debt, or title, will be sufficient to pass the beneficial interest therein"—

Citing many cases.

Regarding the second and third propositions, the evidence shows conclusively that she has the legal title to the Cold Water Creek water which Berrett for seventeen years has used, under the contract, in exchange for the Rice Creek water used by appellant and her predecessors in interest; that she has the legal title to a sufficient amount of the capital stock of the North Ogden Irrigation Company to enable her to continue to furnish to Berrett the Cold Water Creek water as provided in the contract, and that she is not only able and willing, but anxious, to perform all of the conditions of the contract required of her by its terms. Findings of fact No. 4 are, therefore, not only unsupported by evidence, but are contrary to evidence of the most positive and conclusive character.

In its seventh finding of fact the court found:

"That, while the plaintiff has continued to improve the real estate of which she was in the possession and described in the complaint, such improvements or expenditures were not made or incurred by reason of any act or conduct of any kind on the part of the defendant Berrett."

The court also found (No. 8):

"That there is no evidence in this case that the plaintiff cannot secure other Rice Creek water or water from other sources to properly irrigate the lands in question and described in the complaint."

These findings are assailed on the ground that they are not sustained by the evidence. The testimony of N. P. Mathews, who was the agent of the appellant, and who for five years next preceding the commencement of this action, as such agent, was in charge of the premises and land upon which the Rice Creek water in dispute has been used, shows that he made improvements on the land of the value of $3000, and that these improvements were made in reliance

upon the right of appellant to use the so-called "exchange water" on the lands. And the undisputed evidence shows that Berrett acquiesced in the use of the water by appellant and her predecessors in interest for seventeen years under the contract, including the five years during which the improvements last mentioned were made. And the evidence also shows that there is no water available for the irrigation of appellant's land other than the exchange water" from Rice Creek heretofore used thereon. N. Montgomery, on this point, testified as follows:

"The only water source this property has known during all these years (thirty-five or forty) has been the waters of Rice Creek. . . . These lands have no other source than Rice Creek after the flood waters."

These flood waters disappear from the 1st to the 15th of July each and every year. N. P. Mathews testified, in part, as follows:

"There has been no other source for irrigating the land than Rice Creek. . . . I have no other water that can be diverted for that purpose; and it is necessary to irrigate these lands during the months of July and August and late in the season of each year."

E. R. Shaw, another witness for appellant, testified that:

"The Mathews (appellant) land would be worthless so far as the orchard or anything like that is concerned, if the water of Rice creek were shut off."

We think this evidence, which is not denied, precludes any inference that there is any water available for the irrigation of appellant's land other than the Rice Creek water. And we think that the evidence shows that during the irrigation season there is no surplus or unclaimed water in Rice Creek. In fact, the record shows that occasionally there is a "shortage" of water in Rice Creek. In the face of this evidence which is not disputed, the court's findings of fact Nos. 7 and 8 cannot be upheld.

Counsel for respondent Berrett contends that the contract on its face shows "it was only contemplated between the parties to be a temporary affair, or, in other words, it was not

to be permanent, and was to exist only during the pleasure of the parties." In his discussion of this question counsel says:

"The very language of this contract wherein Berrett agrees to let Shaw have water precludes the idea of a permanent trade. It is true no limit of time is stated in the contract,· and it is equally true that the certificates of stock representing the water in question were never transferred by Berrett, who always paid the taxes levied against the stock."

Of course, this contract can be terminated by the mutual consent of all the parties who have a beneficial interest therein, but that is not the question here involved. The question here presented is, May Berrett, under the undisputed facts of this case which show that appellant has performed every duty required of her by the terms of the contract, and who is ready, able, and willing to continue to discharge every obligation imposed upon her by the instrument, terminate it against the wishes of appellant and without her consent, and thereby cause her great and irreparable damage? In construing contracts, the rule is elementary that, where the meaning of the parties is not clear regarding some essential part or feature of it, courts will, in determining what the intention of the parties was, consider not only the nature of the instrument, but will take into consideration the circumstances and conditions surrounding the parties executing it and the objects they had in view and which prompted them to make the contract, as shown by the evidence.

In 2 Page on Contracts, sec. 1123, the author says:

"It is a recognized rule of construction that the court will place itself in the position of the parties who made the contract as nearly as can be done by admitting evidence of the surrounding facts and circumstances, the nature of the subject-matter, the relation of the parties to the contract, and the objects sought to be accomplished by the contract."

See, also, 9 Cyc. 587. Applying this rule of construction to the contract in question, we find that the exchange of the Rice Creek water in controversy was made by Berrett

with appellant's predecessors in interest for Cold Water Creek water about 1870 or 1872, and this exchange continued without interruption until just before the commencement of this action. As hereinbefore stated, the written contract was executed in 1892. In the meantime valuable and permanent improvements were made on the land upon which this Rice Creek water was being used. Not only these improvements, but the land itself, would be rendered practically valueless without this Rice Creek water.

The evidence shows that Berrett, when he entered into the written contract, could not use the water of Rice Creek on his lands. On this point J. B. Bailey, a witness for appellant, testified as follows:

"I have been acquainted with the cultivation of the Mathews (appellant's) lands for the past twenty-one years. During that time these lands have never used any water from what is known as Cold Water Creek. They cannot do so." The witness further testified, and his testimony is not denied:

"I know Mr. Berrett, and where his lands are. They are below what is known as the Cold Water Ditch."

Taking into consideration the valuable property interests of Berrett and of plaintiff's predecessors in interest that had been acquired and created by them through this exchange of water, in connection with all the other facts and circumstances leading up to and surrounding the execution of the contract, we think it may be fairly inferred that the parties to the contract executed the same for the purpose of protecting and perpetuating these property interests, and that it was their intention that the contract should continue in force until terminated by the mutual consent of all parties owning a beneficial interest therein. The contract was executed June 7, 1892. Now let us suppose, for the sake of illustration, that in July or August of that same year, when the use of the Rice Creek water was indispensable to the saving of the orchard and the growing of the crops on the lands mentioned, Berrett had refused to further comply with the terms of the contract, and had attempted to take

the Rice Creek water from the land and terminate the contract, is it not plain that appellant's predecessor in interest, Elijah Shaw, could have gone into a court of equity and compelled Berrett to specifically perform his part of the contract? Undoubtedly he, Shaw, under such circumstances, would have been entitled to equitable relief. Berrett having acquiesced in the use of the Rice Creek water on the land referred to for seventeen years, during which time valuable and permanent improvements have been placed upon the land in reliance on the use of the water in dispute, all of which improvements as well as the land would be practically valueless without the water, we think a much stronger reason exists for equitable relief than in the hypothetical case above stated.

We are clearly of the opinion that appellant is entitled to the relief prayed for in her complaint. This case differs materially from the case of *Montgomery v. Berrett,* 40 Utah, 385, 121 Pac. 569, recently decided by this court. In that case there was a sharp conflict in the evidence regarding the terms of the alleged parol agreement for the exchange of water, and the court there found, among other things, "that the proofs in the case are not clear and satisfactory or sufficient to warrant the court to order a specific performance of the said alleged contract." Whereas, in the case at bar, there is no substantial conflict in the evidence on any material issue in the case.

The cause is remanded, with directions to the lower court to set aside its findings Nos. 4, 7, and 8, heretofore made and filed in the case, and to vacate the judgment rendered thereon, and to make findings and render judgment in accordance with the views expressed herein, appellant to recover her taxable costs in this and in the lower court.

FRICK, C. J. (concurring).

I concur. Under the contract in question, the exchange of the water was made for a special purpose. Such exchange was without limit and unconditional. Neither party to the agreement reserved the right to terminate the agreement

without the consent of the other, although it must have been contemplated by both that the use of the water when used as contemplated would result in valuable improvements which would be materially affected, if not destroyed, in case the agreement should be terminated, as is now attempted by respondent. We must assume that it was for this reason that the right to terminate the agreement by one without the consent of the other was withheld. I think the agreement, in view of the subject-matter, is of that character which a court of equity should specifically enforce, especially when it is made to appear, as in this case, that one of the parties would suffer irreparable injury if it were terminated, and the other can suffer no injury in case of its enforcement.

STRAUP, J., concurs in both.